[Cite as *Hicks v. Cleveland Museum of Art*, 2023-Ohio-3633.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|                         |   |           |
|-------------------------|---|-----------|
| IRIS HICKS,             | : |           |
| Plaintiff-Appellant,    | : | No. 112503 |
| v.                      | : |           |
| THE CLEVELAND MUSEUM OF ART, | : |      |
| Defendant-Appellee.     | : |           |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 5, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-953099

### *Appearances:*

Friedman, Domiano & Smith Co., L.P.A. and Marco G. Bocciarelli, *for appellant.*

Keith D. Thomas, *for appellee.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant Iris Hicks was injured after she fell into a large planter box containing trees and other plants in the west atrium of the Cleveland Museum of Art (the "museum"). She appeals the trial court's order granting summary judgment in favor of the museum on her negligence claim. She contends

that genuine issues of material fact exist as to whether the museum owed a duty to warn her regarding the hazard presented by the planter box. For the reasons that follow, we affirm.

**Procedural and Factual Background**

{¶ 2} On February 12, 2020, at approximately 6:00 or 6:30 p.m., Hicks and a friend, Hope Morgan, went to the museum's west atrium to attend a discussion by Dr. Runoko Rashidi, a guest speaker on Egyptology. The west atrium had two large "planter boxes" containing trees and various other types of plants and "greenery." The bases of the planter boxes were a foot or more beneath the level of the atrium floor. The tops of the plants were visible over the sides of the planter boxes but the tree roots were not visible.

{¶ 3} Around the perimeter of each of the planter boxes were white-grey cement walkways. In the aisle or walkway between the two planter boxes (the "center aisle"), backless wooden benches abutted against and extended over the planter boxes. The outside edges of the planter boxes were surrounded by a border in a "contrasting color," i.e., a darker grey, that helped define the outer edges of the planter boxes. There was no such border along the sides of the planter boxes where they abutted against the benches in the center aisle.

{¶ 4} Hicks testified that as she made her way to the area of the atrium in which Dr. Rashidi was speaking, she proceeded down the center aisle, toward a bench, where she could sit and listen to the discussion. The center aisle contained

four benches, two to her left and two to her right. The planter boxes were behind the benches.

{¶ 5} Hicks stated that she had intended to sit on the right edge of the first bench she encountered on her right. Attempting to make more room for Hope to sit on the bench beside her, Hicks took a step to the right, stepping off the edge of the walkway and into the greenery in the planter box behind the bench. Hicks tripped and fell on her right side and back. As a result of her fall, Hicks experienced significant pain in her right leg and knee.

{¶ 6} Hicks testified that she was aware of the presence of the "greenery" in the planter box before her fall — i.e., she had "passed [the garden] section two times that evening" when looking for Dr. Rashidi and had also seen the greenery as she made her way down the center aisle. Hicks stated that the greenery "cover[ed] the edge of the lip" of the walkway and that "the plants come up above the lip of the floor."

{¶ 7} Hicks testified that because the outer sides of the planter box were surrounded by a decorative, "darker grey" "border" — which she had observed when walking in the atrium earlier that evening — she had thought that "there was also a border on the inside of the walkway," where the benches were located, because it "look[ed] dark," it "look[ed] like there's a pattern on the inside as well" and "it would be consistent with the pattern that's on the outside." Hicks stated that, when she stepped to the right, she had "no intention of stepping in the greenery." Rather, she

thought she was "stepping onto the border," i.e., what she believed to be level ground.

{¶ 8} As Hicks was "stepping over to give Hope a chance to sit down on the edge of the bench," she was also "acknowledging" Dr. Rashidi. Hicks testified that she was either still looking right at Dr. Rashidi or was "on [her] way looking down," when she fell. Hicks acknowledged that if she had been looking at the area between the two benches (rather than at Dr. Rashidi) before she took her step, she "would have seen that [she] would have been stepping on greenery" and not the floor.

**The Litigation**

{¶ 9} On September 15, 2021, Hicks filed a complaint in the Cuyahoga County Court of Common Pleas, asserting a negligence claim against the museum. Hicks alleged that the "poorly designed and maintained benches" "overhanging the landscaping" presented a hazard to invitees that was not open and obvious, that by failing to remove the hazard or warn against it, the museum was negligent and that the museum's negligence was a direct and proximate cause of her fall and injuries.

{¶ 10} The museum filed an answer in which it denied the material allegations of the complaint and asserted various affirmative defenses, including that Hicks' claim was barred by the open-and-obvious doctrine.

**The Museum's Motion for Summary Judgment**

{¶ 11} After the parties conducted discovery, the museum filed a motion for summary judgment, arguing that the "edge and greenery" where Hicks stepped, leading to her fall, was open and obvious and that, therefore, the museum owed no

duty to warn Hicks of the alleged defect and was entitled to summary judgment as a matter of law. In support of its motion, the museum submitted excerpts from Hicks' deposition testimony and two photographs Hicks had identified during her deposition that showed the area in which Hicks had tripped and fallen, including the benches and the planter box.[1] The museum argued that, based on the photographs and Hicks' testimony, there was no genuine issue of material fact that the edge of the walkway and the greenery where Hicks stepped was "entirely visible" and "open and obvious" to Hicks prior to her fall and that Hicks' claim was, therefore, barred by the open-and-obvious doctrine.

{¶ 12} Hicks opposed the motion for summary judgment, contending that there were genuine issues of material fact as to whether (1) the "deceptive edge of the planter box" and "hidden drop down to the ground" "concealed * * * underneath the fauna" constituted "latent hazards" that were "not readily discernable by ordinary inspection" and were, therefore, not "open and obvious," (2) the museum had actual or constructive knowledge of the hazard presented by the "pit for the planter box" that "dropped down 1-2 feet" and was "covered by fauna" and (3) the museum breached its duty of care "by failing to inspect [its] premises in a reasonable manner" and "by failing to maintain its premises in a reasonably safe condition." Hicks argued that because "the concealed drop underneath the fauna" in the planter box "could not be detected by a business invitee" and "[t]he lack of a contrast edge

---

[1] In her deposition, Hicks claimed that the photographs of the atrium did not accurately depict the area because there was sunlight in the photographs and her accident occurred in the early evening.

on the inner walkway went unobserved by Ms. Hicks because of the pattern of shadows cast by the plants in the box," it could not be considered an open-and-obvious hazard. In support of her opposition, Hicks submitted excerpts from her deposition testimony; excerpts from the deposition testimony of Jaime Juarez (the museum's director of protective services and safety),[2] excerpts from the deposition testimony of Paul Krenisky (the museum's director of facilities),[3] an unauthenticated "security video" on a "USB drive,"[4] copies of two unauthenticated photos and an affidavit from her expert, architect Richard Zimmerman.[5]

---

[2] Juarez testified regarding his job duties and responsibilities at the museum, his knowledge of the incident, descriptions of the planter boxes, walkway and benches and his knowledge of prior falls in the atrium. He testified that in the past 12 years, approximately 5 other people had fallen in the atrium, but that, to his knowledge, none of the incidents had involved a fall into a planter box from the walkway and no one had been injured.

[3] Krenisky testified regarding his background, renovation projects at the museum, his knowledge of the incident and investigation following the incident, descriptions of the planter boxes (including the depth of the planter boxes), walkway and benches, maintenance of the planter boxes and his knowledge of any prior falls involving the planter boxes. Krenisky stated that he was aware of one prior incident where "somebody was pushing another person, and she went off the edge of the planter." To his knowledge, no one was injured in that incident.

[4] In her opposition, Hicks indicates that the "security video," exhibit No. 2 to Hick's opposition, was "provided via USB drive directly to the Court." That "USB drive" was not included in the record forwarded to this court on appeal. On September 12, 2023, a paralegal for appellant's counsel submitted a letter to this court enclosing "a flash drive containing Security Video, exhibit 1 [sic] listed in Plaintiff's Brief in Opposition of Defendant's Motion for Summary Judgment." This is not a proper means of supplementing the appellate record. *See* App.R. 9(E).

[5] Civ.R. 56(C) places limitations on the types of evidence a party can use to support or oppose a motion for summary judgment. Under Civ.R. 56(C), the materials that may be considered include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence and written stipulations of fact. Other types of documents may be introduced as evidentiary material only through incorporation

Zimmerman's affidavit incorporated by reference a resume and two expert reports that he said were attached; however, the copy of the affidavit that is in the record contains no attachments.[6]

{¶ 13} On February 13, 2023, the trial court granted the museum's motion for summary judgment. The trial court found that there were no genuine issues of material fact, that the hazard presented by the planter box was open and obvious and that the museum, therefore, owed no duty to Hicks to remove the hazard or to warn against it.

{¶ 14} Hicks appealed, raising the following assignment of error for review:

> The trial court erred in granting Appellee's Motion for Summary Judgment as there are genuine issues of material fact for a jury to decide.

---

by reference in a properly framed affidavit. *Professional Bank Servs. v. Grossman DT, Inc.*, 8th Dist. Cuyahoga No. 107670, 2019-Ohio-2230, ¶ 10, citing *Dzambasow v. Abakumov*, 8th Dist. Cuyahoga No. 80621, 2005-Ohio-6719, ¶ 26. We note that in this case, the security video and photographs submitted by Hicks do not comply with Civ.R. 56(C). Where, as here, however, the opposing party fails to object to improperly introduced evidentiary materials, the trial court may, in its discretion, consider those materials in ruling on the summary judgment motion. *Professional Bank Servs.* at ¶ 11, citing *Zapata Real Estate, L.L.C. v. Monty Realty, Ltd.*, 8th Dist. Cuyahoga No. 101171, 2014-Ohio-5550, ¶ 27, and *Dzambasow* at ¶ 27.

[6] In both her brief in opposition to summary judgment and her appellate brief, Hicks cites to opinions offered by her expert, Zimmerman (as purportedly set forth in his expert reports), that the hazard presented by the planter box was not open or obvious. Because these reports were not attached to Zimmerman's affidavit, they could not have been considered by the trial court in ruling on the museum's motion for summary judgment. Accordingly, we do not consider them here.

**Law and Analysis**

**Standard of Review**

{¶ 15} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate.

{¶ 16} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶ 17} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

## Negligence and the Open-and-Obvious Doctrine

{¶ 18} To prevail on a claim of negligence, a plaintiff must prove that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty and (3) an injury to the plaintiff proximately caused by that breach of duty. *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, ¶ 21, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984); *Washington v. Outrage, Inc.*, 8th Dist. Cuyahoga No. 109825, 2021-Ohio-2263, ¶ 19. When the alleged negligence occurs in a premises-liability context, the applicable duty is determined by the relationship between the premises owner or occupier and the plaintiff. *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 122-123, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 10, citing *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996).

{¶ 19} There is no dispute in this case that Hicks was a business invitee of the museum. Premises owners and occupiers generally owe their business invitees a duty of ordinary care. This duty requires the owner or occupier to maintain the premises in a reasonably safe condition and to warn of latent or concealed dangers if it knows, or has reason to know, of them. *Naso v. Victorian Tudor Inn, L.L.C.*, 8th Dist. Cuyahoga No. 110652, 2022-Ohio-1065, ¶ 9, citing *Perry v. Eastgreen Realty Co.*, 53 Ohio St.2d 51, 52, 372 N.E.2d 335 (1978). A premises owner or occupier is not, however, an insurer of its invitee's safety. *Lang* at ¶ 11; *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203, 480 N.E.2d 474 (1985).

{¶ 20} A premises owner or occupier "'owes no duty to persons entering [the] premises regarding dangers that are open and obvious.'" *Goodman v. Dan Rich, LLC*, 8th Dist. Cuyahoga No. 109581, 2021-Ohio-690, ¶ 13, quoting *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5. With respect to open-and-obvious hazards, "'the open and obvious nature of the hazard itself serves as a warning,'" and the owner or occupier may, therefore, "'reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" *Armstrong* at ¶ 5, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). Where applicable, the open-and-obvious doctrine "obviates the duty to warn and acts as a complete bar to any negligence claim." *Armstrong* at ¶ 5.

{¶ 21} Courts apply an objective standard in determining whether a hazard was open and obvious. *See, e.g., Goddard v. Greater Cleveland Regional Transit Auth.*, 2022-Ohio-2679, ¶ 15. Open-and-obvious hazards are hazards that are not hidden, concealed from view or undiscoverable upon ordinary inspection. *Id.*, citing *Lydic v. Lowe's Cos., Inc.*, 10th Dist. Franklin No. 01AP-1432, 2002-Ohio-5001, ¶ 10. The open-and-obvious doctrine focuses on the nature of the hazardous condition itself, rather than the plaintiff's conduct in encountering it. *Armstrong* at ¶ 13. The relevant inquiry is "'whether, under an objective standard, the danger would have been discernible to a reasonable person.'" *Naso*, 2022-Ohio-1065, at ¶ 11, quoting *Smith v. Wal-Mart Stores, Inc.*, 4th Dist. Ross No. 18CS3661, 2019-Ohio-2425, ¶ 14.

{¶ 22} Whether a duty exists is a question of law for the court to determine. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). Where reasonable minds could differ with respect to whether a danger is open and obvious, the issue is one for a jury to decide. *Naso* at ¶ 13, citing *Klauss v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 84799, 2005-Ohio-1306, ¶ 17. Where, however, only one conclusion could be reasonably drawn from the established facts, whether a hazard was open and obvious is properly decided by the court as a matter of law. *Naso* at ¶ 13.[7]

{¶ 23} Hicks contends there are genuine issue of material fact regarding the open-and-obvious nature of the hazard in this case because (1) the depth of the planter box was not visible from the walkway, (2) the edge of the walkway by the benches was unmarked and "concealed" by the "overgrowth of fauna" and (3) it was not unreasonable for Hicks to step onto what she thought was a grey border, given her knowledge of a border elsewhere around the planter box.[8] We disagree.

{¶ 24} A person does not need to observe a hazardous condition prior to a fall for it to be "'an open and obvious condition under the law'"; "'the determinative issue is whether the condition is observable.'" *Naso* at ¶ 12, quoting *Early v. Damon's Restaurant*, 10th Dist. Franklin No. 05AP-1342, 2006-Ohio-3311, ¶ 7.

---

[7] Hicks does not argue that the attendant circumstances exception to the open-and-obvious doctrine applies here. Accordingly, we do not address the issue.

[8] Hicks does not cite any cases in her appellate brief in which courts have found a genuine issue of material fact for trial based on similar or analogous facts and circumstances.

{¶ 25} Viewing the hazard objectively, based on the photographs, there is no question that a reasonable person would have observed (1) the edge of the walkway, (2) that the base of the planter box was below the level of the walkway (rather than even with the walkway) and (3) that, if a person were to step off the walkway, he or she would be stepping down into the planter box. As the trial court aptly explained when granting the museum's motion for summary judgment:

> The contrast between the garden area and the walkway is evident from the photos and security footage. The walkway path is quite distinct. Perhaps more importantly the planter box is not simply green area containing something that looks like grass. It contains plants and trees. The tree roots are not in line with the concrete or even visible. A reasonable observer would conclude that the bottom of the box where the tree roots are must be significantly below the walkway.

> Similarly, the leafy heads of the foliage only rise to the level of the concrete walkway and some of the plants do not even reach that high. A reasonable person would conclude these leafy heads have stems that are a significant ways down. Indeed, while her subjective perception is not dispositive, Hicks's own perception of the area is in line with what a reasonable observer would see. When looking at the photo in deposition she stated, "[a]nd as you can see in the photo, the plants come up above the lip of the floor." Just like any reasonable observer, she correctly perceived that the plants, and thus the base of the plant box, were below the level of the walkway. Because it was evident this area was not level with the walkway, the hazard was open and obvious.

> This conclusion would not change even if the lighting were slightly different on the night of the incident as Hicks suggests. Unless it was much darker, and Hicks does not claim that it was, the contrast would still be evident and the fact that the plants were coming up from the ground would still be readily observable.

(Footnote omitted.)

{¶ 26} Further, Hicks admitted not only that "the plants come up above the lip of the floor" but also that she would have seen that she was stepping on the "greenery" in the planter box, rather than the walkway, if she had looked down between the benches (rather than at Dr. Rashidi) when she took her step. Although "[t]he benchmark for the court is not whether the person saw the object or danger, but whether the object or danger was observable," *Hopkins v. Greater Cleveland Regional Transit Auth.*, 2019-Ohio-2440, 139 N.E.3d 491, ¶ 16 (8th Dist.), Hicks' admission further supports the conclusion that the hazard presented by the planter box was open and obvious and discoverable by ordinary inspection. *Naso*, 2022-Ohio-1065, at ¶ 12 (noting that "[e]ven in cases where the plaintiff did not actually notice the condition until after she fell, courts have found no duty where the plaintiff could have seen the condition had she looked").

{¶ 27} Because the only reasonable conclusion that could be drawn from the facts here was that the hazard presented by the edge of the planter box was open and obvious, the museum owed no duty to Hicks to warn her of the hazard, as a matter of law. Accordingly, the trial court did not err in entering summary judgment in favor of the museum. *Cf. LaFollette v. Taylor Bldg. Corp. of Am.*, 2d Dist. Clark No. 06-CA-40, 2007-Ohio-4085, ¶ 1, 24-35 (trial court properly granted summary judgment in favor of property owner because hole between the sidewalk and the street left when a mailbox pole was removed — into which the victim stepped — was an open-and-obvious hazard; the only reason that the victim did not see the hole before stepping into it was because he was walking

backwards at the time, not looking in the direction he was moving); *Vaughn v. Firehouse Grill, LLC*, 1st Dist. Hamilton No. C-160502, 2017-Ohio-6967, ¶ 10-15 (summary judgment properly granted in favor of a restaurant owner on customer's negligence claim stemming from her trip and fall down a handicap ramp because reasonable minds could only conclude that the condition of the ramp was open and obvious; plaintiff's testimony that the color of the ramp and the abutting parking line hid the change in elevation between the ramp and the parking lot, making it appear as if the entire painted area was a part of the ramp did not, by itself, create a genuine issue of material fact); *Armentrout v. Meyer's Garden Ctr. & Landscaping, Inc.*, 12th Dist. Butler No. CA2004-12-315, 2005-Ohio-5901, ¶ 9-10, 12-13 (trial court property granted summary judgment in favor of property owner because black edging used along one side of landscaping bed to separate mulch bed from brick pavers and concrete walkway was open-and-obvious hazard from which owner could reasonably expect that plaintiff would discover and protect herself; appellate court rejected plaintiff's claim that landscape edging was not open and obvious because the edging and the mulch in the landscaping bed were both black and difficult to discern, and her view was hampered by shadows shading the landscaping bed during the time of her fall); *Galligan-Dent v. Tecumseh Outdoor Drama*, 4th Dist. Ross No. 16CA3534, 2016-Ohio-7907, ¶ 21-23, 27 (hazard associated with "drop-off" on left side of asphalt ramp/apron at the base of the stairway was open and obvious as a matter of law, rejecting argument that insufficient lighting contributed to the latent nature of

the hazard); *Jordan v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2019-00758JD, 2021-Ohio-1526, ¶ 10-13 (no genuine issue of material fact that grade change on the edge of basketball court was an open-and-obvious hazard where an ordinary inspection would have revealed the elevation change; photographs of the edge of basketball court showed that elevation change from the basketball court to the dirt and grass was observable and plaintiff agreed that the grade change was noticeable when looking at the court from the grass).

{¶ 28} Hicks' assignment of error is overruled.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR